UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JOHN ZOURDOS, HELEN ZOURDOS, and
DIMITRIOS ZOURDOS,

                Defendants.

Case No. 5:20-cr-298 (DNH)

---

**DEFENDANTS' JOINT TRIAL MEMORANDUM OF LAW**

| | |
|---|---|
| **LAW OFFICE OF DAVID M. GARVIN** | **BARCLAY DAMON, LLP** |
| *Attorneys for Defendants John and Helen Zourdos* | *Attorneys for Defendant Dimitrios Zourdos* |
| 200 South Biscayne Boulevard, Suite 3150 | Barclay Damon Tower |
| Miami, Florida  33131 | 125 East Jefferson Street |
| Telephone: (305) 371-8101 | Syracuse, New York  13202 |
| | Telephone:  (315) 425-2700 |

i

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.  SUMMARY OF THE CHARGES AND ELEMENTS...................................................... 2

III. WILLFULNESS AND GOOD FAITH ............................................................................ 2

IV.  PREJUDICIAL, IRRELEVANT MATTERS SHOULD BE PRECLUDED FROM
     EVIDENCE ................................................................................................................... 4

     a.   A Civil Dispute Settled in 1997 ...................................................................... 6
     b.   Workplace Conditions..................................................................................... 7
     c.   Witness Opinions Concerning Defendants' Lifestyle ................................... 9

V.   CONCLUSION…………………………………………………………………………12

## TABLE OF AUTHORITIES

**Cases**

*Amica Mut. Ins. Co. v. Coan*, No. 3:17-cv-01043 (VAB), 2020 U.S. Dist. LEXIS 108215, *8 (D. Conn. June 19, 2020) .................................................................................................................. 5

*Boger v. N.Y. State Office of Parks, Rec. & Historic Pres.*, No. 5:17-CV-289 (MAD/TWD), 2019 U.S. Dist. LEXIS 197458, *11 (N.D.N.Y. Nov. 14, 2019) ........................................................ 5

*Brotman v. National Life Ins. Co.*, 94 CV 3468 (SJ), 1999 U.S. Dist. LEXIS 22379, *6 (E.D.N.Y. Jan. 22, 1999) .................................................................................................................. 7

*Cheek v. United States*, 498 U.S. 192, 202-03 (1991) ............................................................... 3, 4

*Dunkin Donuts Inc. v. JHZ Equities, Inc., et al.*, Case No. 97 cv. 642 (TJM/DNH) ..................... 6

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) ............ 6

*Hoffman v. Brandt*, 421 P.2d 425, 428 (Cal. 1966) .................................................................... 10

*Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 Civ 2675 (KBF), 2012 U.S. Dist. LEXIS 21742, *7 (S.D.N.Y. Feb. 14, 2012)................................................................................. 5

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 129 (D. Conn. 2010) ............................................................................................................................................ 7

*Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) .. 6, 9, 10

*Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351 (2d Cir. 2009) ............... 7

*Sansone v. United States*, 380 U.S. 343, 351 (1965) ..................................................................... 2

*Skinner v. City of New York*, 15-CV-6126 (KAM)(JO), 2017 U.S. Dist. LEXIS 104650, *4 (E.D.N.Y. Apr. 7, 2017)................................................................................................................ 5

*United State v. Windfelder*, 790 F.2d 576, 580-81 (7th Cir. 1986)............................................... 4

*United States Securities and Exchange Commission v. Cititgroup Global Mkts., Inc.* 673 F.3d 158, 166 (2d Cir. 2012)................................................................................................................. 7

*United States v. Ballistrea*, 101 F.3d 827, 832 (2d Cir. 1996)...................................................... 2

*United States v. Bishop*, 412 U.S. 346, 360-61 (1973) ................................................................. 3

*United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995)......................................................... 6

*United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981).............................................................. 7

*United States v. Gramins*, 939 F.3d 429, 448 (2d Cir. 2019) ...................................................... 6

*United States v. Gupta*, 747 F.3d 111, 131 (2d Cir. 2014) .......................................................... 5

*United States v. Hitt*, 981 F.2d 422,424 (9th Cir.1992) .............................................................. 10

*United States v. Jergensen*, No. 8:16-CR-235(BKS), 2017 U.S. Dist. LEXIS 225401, *18-19 (N.D.N.Y. Oct. 6, 2017).............................................................................................................. 9

*United States v. Litwok*, 678 F.3d 208, 215 (2d Cir. 2012). ......................................................... 2

*United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999)................................................. 10

*United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006)........................................................ 6

*United States v. Pomonio*, 429 U.S. 10, 12 (1976) ...................................................................... 3

*United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).................................................... 6

*United States v. Regan*, 937 F.2d 822, 926 (2d Cir. 1991) .......................................................... 3

*United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990)..................................................... 2

*Whittenburg v. Werner Enterprises Inc.*, 561 F.3d 1122, 1130 n.1 (10th Cir. 2009) .................. 10

**Statutes**

18 U.S.C. § 371............................................................................................................................ 10

26 U.S.C. § 7201............................................................................................................................ 2

26 U.S.C. § 7206(2) ....................................................................................................................... 2

**Other Authorities**

Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.02[1] (Joseph M. McLaughlin ed., 2d ed. ........................................................................................................ 7

**Rules**

Federal Rules of Evidence Rule 401............................................................................................ 5, 8
Federal Rules of Evidence Rule 402......................................................................................... 5, 8, 9
Federal Rules of Evidence Rule 403..................................................................................... 5, 9, 10, 11
Federal Rules of Evidence Rule 408............................................................................................... 7
Federal Rules of Evidence Rule 402............................................................................................... 5
Federal Rules of Evidence Rule 404...................................................................................... 4, 6, 7, 8
Federal Rules of Evidence Rule 408............................................................................................... 7

Defendants John Zourdos, Helen Zourdos and Dimitrios Zourdos respectfully submit this joint trial memorandum of law to brief the Court on substantive and evidentiary issues defendants anticipate will be raised at the trial.

## I. PRELIMINARY STATEMENT

Since 2000, John Zourdos and Helen Zourdos have operated a retail donut shop business under the name Dippin Donuts, which now has two locations in Rome, New York and one in New Hartford, New York. The Zourdos's son, Dimitrios Zourdos, works in the family business.

On October 7, 2020, the United States initiated this criminal action by filing its grand jury indictment [Dkt. No. 1] against John Zourdos, Helen Zourdos, and Dimitrios Zourdos, which alleged the following charges against all defendants:

**Count 1** – Conspiracy to Defraud the United States, specifically the Internal Revenue Service, through Income Tax Fraud and Payroll Tax Fraud;

**Counts 2-5** – Tax Evasion – Individual Income Tax of John and Helen Zourdos;

**Counts 6-8** – Tax Evasion – Individual Income Tax of Dimitrios Zourdos; and

**Counts 9-15** – Aiding and Assisting in the Preparation of False Corporate Tax Returns.

Because this case involves federal income tax charges, the government must prove defendants acted with "willfulness," which is discussed below in this memorandum.

The defendants also address below anticipated evidentiary objections to certain documents and testimony the government may attempt to introduce at trial. That potential evidence includes (a) information regarding a litigation between a business entity then owned by John Zourdos and Dunkin Donuts that was settled by mutual agreement, without admission of liability, in 1997; (b) highly prejudicial characterizations of workplace conditions in the businesses operated by John Zourdos and Helen Zourdos that have no relevance to the indicted charges; and (c) speculative lay

opinion testimony to the grand jury regarding the defendants' respective lifestyles being "rich" or beyond their means.

## II. SUMMARY OF THE CHARGES AND ELEMENTS

The present charges against the defendants are (Count 1) Conspiracy to Defraud the United States, specifically the Internal Revenue Service, through Income Tax Fraud and Payroll Tax Fraud; (Counts 2-5) Tax Evasion – Individual Income Tax of John and Helen Zourdos; (Counts 6-8) Tax Evasion – Individual Income Tax of Dimitrios Zourdos; and (Counts 9-15) Aiding and Assisting in the Preparation of False Corporate Tax Returns.  Dkt. No. 1.

To prove a charge for conspiracy to defraud the United States, the government must show "(1) that [the] defendant entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *United States v. Ballistrea*, 101 F.3d 827, 832 (2d Cir. 1996)(citation omitted).

With respect to tax evasion under 26 U.S.C. § 7201, the government is required to prove three elements:  (1) willfulness, (2) the existence of a tax deficiency and (3) an affirmative act performed with intent to evade or defeat the calculation or payment of the tax.  *Sansone v. United States*, 380 U.S. 343, 351 (1965); *United States v. Litwok*, 678 F.3d 208, 215 (2d Cir. 2012).

Lastly, under 26 U.S.C. § 7206(2), any person who "willfully aids or assists" in, filling a materially false tax return "shall be guilty of a felony.". *See also United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990).

## III. WILLFULNESS AND GOOD FAITH

Defendants anticipate the definition of "willfulness" and the evidentiary issues it raises will be a critical issue at trial.  A long line of cases has examined and refined "willfulness" in the context of federal tax evasion prosecutions, and it remains a malleable concept focused on a subjective analysis by the jury as to whether the defendant voluntarily and intentionally violated a

known legal duty. *Cheek v. United States*, 498 U.S. 192, 202-03 (1991); *United States v. Regan*, 937 F.2d 822, 926 (2d Cir. 1991), *amended by*, 946 F.2d 188 (2d Cir. 1992).

As the Supreme Court held in *Cheek*, the term "willfully" has special meaning with respect to federal tax offenses. That case clarified prior law and established an exception to the general rule that "ignorance of the law or a mistake of law is no defense to criminal prosecution." *Cheek*, 498 U.S. at 201-202. Instead, the Court ruled that "[t]he term 'willfully' [as used in federal criminal tax offenses] connot[es] a 'voluntary, intentional violation of a known legal duty.'" *Id*. (citing *United States v. Pomonio*, 429 U.S. 10, 12 (1976) and *United States v. Bishop*, 412 U.S. 346, 360-61 (1973)). Thus, to establish willfulness, the government must prove (a) the law imposed a duty on the defendant; (b) the defendant knew of that duty; and (c) the defendant voluntarily and intentionally violated that duty. *Cheek*, 498 U.S. at 201.

Related to "willfulness" is the defense of "good faith." Just as a subjective analysis applies to "willfulness," a defendant asserting a good faith defense need not prove his understanding of his legal obligations was objectively reasonable. *Cheek*, 498 at 202-03 (1991) ("It would of course be proper to exclude evidence having no relevance or probative value with respect to willfulness; but it is not contrary to common sense, let alone impossible, for a defendant to be ignorant of his duty based on an irrational belief that he has no duty, and forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision."); *United States v. Regan*, 937 F.2d 823, 826 (2d Cir. 1991), *amended by* 946 F.2d 188 (2d Cir. 1992). As the Court in *Cheek* concluded, "the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable." 498 U.S. at 202.

Although a finding that a defendant acted willfully can be inferred from the evidence, that inference must be left solely to the jury to draw. *Cheek*, 498 U.S. at 203 ("Characterizing a particular belief as not objectively reasonable transforms the inquiry into a legal one and would prevent the jury from considering it."). Thus, the Government must not elicit opinion evidence from experts or agents as to whether a defendant acted willfully. *United State v. Windfelder*, 790 F.2d 576, 580-81 (7th Cir. 1986)(court of appeals held that, under Rule 704(b) of the Federal Rules of Evidence, the district court erred in admitting the agent's testimony because it impermissibly stated an opinion as to the defendant's willfulness).

The Defendants anticipate questions regarding willfulness and good faith will come up through various evidentiary objections and in the jury instructions and will supplement the above briefing as needed to address specific issues as they arise.

**IV.     PREJUDICIAL, IRRELEVANT MATTERS SHOULD BE PRECLUDED FROM EVIDENCE**

The government has included in its disclosures pursuant to Rule 404(b) of the Federal Rules of Evidence ("FRE") [Dkt. Nos. 38 and 39.] and in discovery produced to Defendants three categories of irrelevant and prejudicial information: (a) information concerning a civil dispute between John Zourdos's former business entity and Dunkin Donuts that was resolved by a written settlement agreement; (b) highly prejudicial statements regarding workplace conditions in the Dippin Donuts business; and (c) lay-opinion testimony to the grand jury that characterized the Zourdoses as being "rich."  As discussed in detail below, evidence on these matters is irrelevant to the charges at issue and highly prejudicial.  These matters have no place before the jury in this trial.

Courts must preclude testimony and other evidence that is irrelevant, prejudicial, confusing, or wasteful of time. See FRE 403; *see also Island Intellectual Prop. LLC v. Deutsche*

4

*Bank AG*, No. 09 Civ. 2675 (KBF), 2012 U.S. Dist. LEXIS 21742, *7 (S.D.N.Y. Feb. 14, 2012). Even if the evidence presented is relevant, a court must preclude its admission if its probative value is substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *United States v. Gupta*, 747 F.3d 111, 131 (2d Cir. 2014) (quoting FRE 403; other citations omitted).

Pursuant to Rule 402, "[i]rrelevant evidence is not admissible." Rule 401 defines evidence as "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Further, the court's determination of what constitutes "relevant evidence" is guided by the nature of the claims and defenses presented. *See Boger v. N.Y. State Office of Parks, Rec. & Historic Pres.*, No. 5:17-CV-289 (MAD/TWD), 2019 U.S. Dist. LEXIS 197458, *11 (N.D.N.Y. Nov. 14, 2019); *see also Amica Mut. Ins. Co. v. Coan*, No. 3:17-cv-01043 (VAB), 2020 U.S. Dist. LEXIS 108215, *8 (D. Conn. June 19, 2020); *Skinner v. City of New York*, 15-CV-6126 (KAM)(JO), 2017 U.S. Dist. LEXIS 104650, *4 (E.D.N.Y. Apr. 7, 2017).

Further, even if the information is found to be probative, as required by Rule 402, courts should exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *United States v. Gramins*, 939 F.3d 429, 448 (2d Cir. 2019). Evidence is unfairly prejudicial if it leads the jury to find guilt based upon a different ground than required by the elements of the charged offense. *See Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Evidence is prejudicial if it "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d

5

173, 176-77 (S.D.N.Y. 2008) (quoting *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995)); *see also United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006)(citations omitted) (holding that "[t]he prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.").

Finally, as is relevant to both workplace conditions and the 1997 settlement with Dunkin Donuts, under FRE 404, "proof of uncharged crimes or bad acts is not admissible to prove the character of a person in order to show action in conformity therewith." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006).

      a.      **A Civil Dispute Settled in 1997**

The government provided notice that it may seek to introduce evidence as to an alleged dispute John Zourdos had with Dunkin Donuts while he operated a franchise of that brand. Dkt. No. 39. More specifically, the government's Rule 404(b) notice states "John Zourdos operated one or more Dunkin Donuts stores as a franchisee store owner in or around the late 1990s and that his franchise agreement was terminated because he did not report all sales revenue to Dunking Donuts as required." Dkt No. 39.

The matter to which the government is referring was litigated in this Court under the caption *Dunkin Donuts Inc. v. JHZ Equities, Inc., et al.*, Case No. 97 cv. 642 (TJM/DNH)(the "1997 Lawsuit"). After less than four months of litigation, the 1997 Lawsuit was settled in a private and apparently confidential settlement agreement and all claims were dismissed with prejudice, with no admission of liability.

Use of a settled civil litigation as evidence at trial is governed by FRE 408, which provides that settled civil lawsuits are inadmissible to prove liability of an underlying claim. FRE 408; *see also United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981); *Brotman v. National Life Ins. Co.*, 94 CV 3468 (SJ), 1999 U.S. Dist. LEXIS 22379, *6 (E.D.N.Y. Jan. 22, 1999); *Rein v. Socialist*

6

*People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351 (2d Cir. 2009)(FRE 408 "bars evidence of a compromise to prove liability for the claim [or] to impeach by a prior inconsistent statement or a contradiction.").

"[T]he Rule is based on the policy of promoting the compromise and settlement of disputes, by taking into account the reality that permitting the consideration of settlement offers as reflecting an admission of liability would discourage parties from discussing settlement or making settlement offers." *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 129 (D. Conn. 2010)(citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 408.02[1] (Joseph M. McLaughlin ed., 2d ed.)).

As was the case in the 1997 Lawsuit, "[i]t is commonplace for settlements to include no binding admission of liability." *United States Securities and Exchange Commission v. Cititgroup Global Mkts., Inc.* 673 F.3d 158, 166 (2d Cir. 2012). As such, any allegations from the 1997 Lawsuit are of little probative value, even if they were admissible.

Accordingly, the government should not be permitted to use this settled and dismissed civil suit as evidence of a "crime, wrong, or act" under FRE 404.

### b. Workplace Conditions

As part of its investigation, the government conducted interviews of and obtained grand jury testimony from a number of current and former employees of Dippin Donuts regarding their time working for the business. Several of these employees made gratuitous statements concerning the work atmosphere, environment, or conditions for employees at Dippin Donuts that would tend to paint the defendants in a negative light if it is presented to the jury. Because the risk of prejudice outweighs the probative value of such information, the Court should exclude any evidence concerning workplace activities that is not strictly relevant to the charges in the Indictment.

For example, one employee claimed in an interview conducted on August 17, 2017, as follows:

- She "worked a lot of hours . . . without breaks":
- She "typically had to cover other employees' shifts";
- She "was also asked . . . to use her personal vehicle to drive to the two other Dippin Donuts locations to 'pick-up stuff for the store she worked at'";
- She "would be the first employee to arrive at the store to open it and the last employee to close the store"; and
- She would work alone at a "very busy" store.

Another employee stated in an interview that, among other things, the defendants "treat[ed] their employees bad" and, specifically, would "yell[] at employees in front of customers." During grand jury testimony at least two witnesses testified in very conclusory fashion that when they were minors, they were required to work in excess of limits established under labor laws.

None of the charges in the Indictment involve the working environment, conditions, or treatment of the employees for those accused. As such, any evidence or testimony concerning the work environment, conditions, or treatment of employees at Dippin Donuts is plainly irrelevant under FRE 401 and, therefore, should be precluded under FRE 402.

Such testimony would mislead or confuse the jury into believing that the defendants' guilt or innocence on the tax charges somehow is associated whether they were "good" employers or supervisors. *See United States v. Jergensen*, No. 8:16-CR-235(BKS), 2017 U.S. Dist. LEXIS 225401, *18-19 (N.D.N.Y. Oct. 6, 2017)(holding that, even if the testimony was found to be relevant, it was substantially outweighed by the dangers under FRE 403 because the proposed testimony concerned acts "unrelated and dissimilar to [those] alleged in the indictment").

Therefore, even if the evidence is found to be relevant by the Court, it would be unfairly prejudicial because it would lead the jury to find guilt upon a different ground than required by the elements of the charged offenses.  *See Old Chief*, 519 U.S. at 180.

Further, if the government is allowed to introduce testimony concerning the so-called "bad" working environment, conditions, and treatment of employees at Dippin Donuts, the defendants would be forced to introduce testimony and evidence to refute those allegations, including testimony from many of the same witnesses interviewed by the government who attested to good working conditions.  The competing evidence regarding workplace conditions would become a trial-within-a-trial and unnecessarily delay the matter, increase costs and waste the Court's time. Accordingly, the Court should preclude such evidence under FRE 403.

    **c.**    **Witness Opinions Concerning Defendants' Lifestyle**

Throughout various interview memoranda and the grand jury transcripts, the government elicited witness opinion testimony as to the "lifestyle" of the Defendants. One witness offered an opinion that the defendants are a "very wealthy family" who "drive vehicles that I don't even know how they can afford, honestly."  Another witness stated "[i]t's like a rich lifestyle, vehicles everything" and "Ferraris, I don't know, I think it's basically every car except a Jaguar, I think."

"Justice is to be accorded to rich and poor alike, and a deliberate attempt by counsel to appeal to social or economic prejudices of the jury, including the wealth or poverty of the litigants, is misconduct where the asserted wealth or poverty is not relevant to the issues of the case." *Hoffman v. Brandt*, 421 P.2d 425, 428 (Cal. 1966).  "Comments on the wealth of a party have repeatedly and unequivocally been held highly prejudicial, and often alone have warranted reversal." *Whittenburg v. Werner Enterprises Inc.*, 561 F.3d 1122, 1130 n.1 (10th Cir. 2009); *see also United States v. Hitt*, 981 F.2d 422,424 (9th Cir.1992)(finding "where the evidence is of very

9

slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury").

As the one court explained, "almost everyone" – rich or poor – "has a motive to get more money." *United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999). But, in this case, the question is not motive; it is whether the defendants had an intent to defraud the United States. 18 U.S.C. § 371 ("If two or more persons conspire . . . to . . . to defraud the United States"). Shallow, reflexive witness perceptions of luxury or flashiness, based on vehicle makes and models driven by the defendants, do not speak to whether the defendants had an intent to defraud. As such, witness commentary on defendants' relative wealth has little probative value.

In contrast, such evidence is very prejudicial to defendants. Prejudicial evidence invites jurors to decide the case on an "emotional basis." FRE 403 advisory committee's note. Witness testimony about what kind of car is a luxury car, or whether other material goods connote wealth, are largely subject and rely on individual witness taste and perceptions. Such testimony has the "capacity . . . to lure the factfinder into declaring guilt on a ground different from proof specific to the offence charged." *Old Chief v. United States*, 619 U.S. 172, 180 (1997). Whatever minimal probative value of witness testimony on what constitutes an expensive lifestyle or a luxury car has little probative value is outweighed by its tendency to prejudice the defendants. Accordingly, it should be precluded under FRE 403.

V.  **CONCLUSION**

Defendants offer the above as a summary of legal and evidentiary issues that they currently reasonably can anticipate will arise at trial. As disclosures of exhibits and other factual matters continue through the time of this writing, defendants cannot anticipate all issues that will arise, and, therefore, will supplement this briefing throughout the trial should the need arise.

**DATED**:  October 22, 2021

| | |
|---|---|
| **DAVID M. GARVIN, P.A.** | **BARCLAY DAMON LLP** |
| By: ___/s David M. Garvin_____ | By: ___/s Gabriel M. Nugent_____ |
|   David M. Garvin |   Gabriel M. Nugent |
|   *Admitted Pro Hac Vice* |   David G. Burch |
| 200 South Biscayne Boulevard, Suite 3150 | Barclay Damon Tower |
| Miami, Florida 33131 | 125 East Jefferson Street |
| Telephone: (305) 371-8101 | Syracuse, New York  13202 |
| Facsimile: (305) 371-8848 | Telephone: (315) 425-2700 |
| E-Mail:  ontrial2@gmail.com; | Facsimile: (315) 425-2701 |
| dgarvin@garvinlaw.com | E-Mail:  gnugent@barclaydamon.com |
| *Attorneys for Defendants* | *Attorneys for Defendant* |
| John Zourdos and Helen Zourdos | Dimitrios Zourdos |