IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************

**UNITED STATES OF AMERICA**          Criminal No.:  5:20-cr-00298 (DNH)

    v.

**DIMITRIOS ZOURDOS,**

    **Defendant.**

*******************************

**GOVERNMENT'S REPLY IN RESPONSE TO
THE SENTENCING MEMORANDUM OF DIMTRIOS ZOURDOS**

    The United States of America, by and through the undersigned attorneys, submits this reply memorandum in response to the sentencing memorandum of defendant Dimitrios Zourdos.

    1.    **Defendant Was Central to the Tax Fraud Scheme**

    The Government does not deny that Dimitrios is less culpable than his parents, and their advisory sentencing guidelines calculations (including an aggravating role adjustment for John and Helen Zourdos) reflect that. However, Dimitrios was a central player in the scheme, and he does not qualify for a minor role adjustment. Dimitrios managed the most profitable of the three donut stores; his handwriting was all over the calendar notebooks (including when decimal points were added after the audit to throw off future auditors); and he ran the entire donut shop operation and tax fraud conspiracy—including by diverting cash from the drawers directly into his parents' bank accounts—while John and Helen were in Greece. That Dimitrios did not engage directly with the accountants does not undermine his guilt or suggest that he should not be meaningfully punished. Dimitrios knew that he and his parents were hiding money from the IRS, and he was neck deep in carrying on that deception and taking (and spending) cash from the drawers that was never reported. Also, like his parents, Dimitrios continues to deflect blame on others.

2. **Defendant Is Responsible for the Tax Loss Resulting from The Entire Conspiracy in Which He Participated**

Defendant Dimitrios Zourdos contends that the PSR's calculation of tax loss is wrong, claiming the loss is somewhere between $550,000 and $1.5 million, relying upon and incorporating the contentions of defendants John and Helen Zourdos. Defs' Br. at 7. He then contends that the loss should be lower (level 20) because he had less involvement in the conspiracy and no involvement in the preparation of the tax returns. *Id.*

The PSR correctly computes the tax loss for Dimitrios (but for one subsequent additional adjustment by RA Petrick, *see* Gov. App. Ex.1, A-0001-007), which is **$2,000,769**. Rather than reiterate our responses to John and Helen's arguments, the Government incorporates them here by reference. *See* Gov't Reply to John/Helen Br., at 3-7; Gov't Opening Br. at 5-8.

In addition, Dimitrios misstates the legal standard for determining loss, as well as his role in the conspiracy. He is responsible for all foreseeable losses he helped cause as a participant in the conspiracy for which he was convicted, even if he was a less culpable participant than his parents. Dimitrios managed the most profitable store (where the most taxes were evaded); his handwriting was all over the second set of books; he began doctoring the second set of books to conceal sales after the initiation of an audit; he personal diverted and deposited unreported cash sales into his accounts and his parents accounts; he paid employees under the table; and he ran the entire Dippin Donuts operation, and tax fraud conspiracy, when his parents went on their annual trips to Greece. That he did not himself participate in tax return preparation is of no moment: that was not his job in the conspiracy. Given his role and what he actually *did do*, the jury easily found, and the Court affirmed after post-trial briefing, that Dimitrios knew tax fraud was being committed through the filing of false returns, for both him and his parents, which he helped facilitate. While Dimitrios may not have benefitted as much from the tax fraud as his parents, the computation of

tax loss is based on the foreseeable harm caused to the victim, not a measure of benefit to the defendants.

### 3. Defendant Encouraged Others to Break the Law

Defendant contends a section 2T1.9(b)(2) enhancement for encouraging others to violate the law should not apply to him because he did not set up the payroll system, had no involvement in the back-end management of the payroll system, and did not know taxes were not being withheld from the cash payments to employees. Def.'s Br. at 8. But the trial evidence was that Dimitrios managed the RDZ location for years, not just when his parents were away in Greece, and personally delivered cash payroll for overtime hours to employees, as he acknowledges in his brief. *See* Tr. 99:23-104:3 (Brittany Labuz); Tr. 138:18-139:24 (Whitney Sykes); 348:12-358:5 (Shane McRae); 400:8-402:16 (Catalina Lyness); 422:18-424:15 (Angela Layman); 757:13-758:22 (Tyler Falcone). He paid himself in virtually the same way (part by payroll check which he deposited along with substantially more cash). Tr. 991:24-993:14; Govt. Exs. 351-A; 351-B. He also helped his parents with their evasion scheme during their annual trips to Greece by making deposits to their accounts while they were away, *see* Tr. 346:17-22.

There was only one reason for paying employees in cash: Dimitrios and everyone else (with the possible exception of the exploited minor employees) understood that cash is less traceable such that it would be easy to not account for it on tax returns, especially where it did not appear on the corresponding paystubs.

It is irrelevant that Dimitrios's parents were the ones who set up the cash payroll system in the first place or that John Zourdos delivered the cash payroll to employees more often than Dimitrios. The evidence was that Dimitrios did pay some employees in cash and, thus, knew taxes were being evaded. Like his parents, Dimitrios participated in paying employees in cash for

overtime to compensate them for overtime hours by allowing them (and Dippin Donuts) to save on taxes by not reporting the cash wages (which is why Dimitrios likewise took part of his overall compensation in cash). In this way, Dimitrios encouraged others to violate the law, even if his parents were more culpable in this respect. Accordingly, the PSR appropriately applies a two-level enhancement under 2T1.9(b)(2) as to Dimitrios.

## CONCLUSION

For the foregoing reasons, the Government respectfully recommends that this Court impose a substantial term of incarceration for Dimitrios Zourdos within his advisory guidelines range.

Dated: July 5, 2022

Respectfully submitted,

DAVID A HUBBERT
Acting Assistant Attorney General

By: */s/ John N. Kane, Jr.*
JOHN N. KANE, JR.
Assistant Chief
U.S. Department of Justice, Tax Division
Northern Criminal Enforcement Section
Bar Roll No. 515130

CARLA B. FREEDMAN
United States Attorney

By: */s/ Michael F. Perry*
MICHAEL F. PERRY
Assistant United States Attorney
Bar Roll No. 518952