UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

Case No.: 5:20-cr-00298-DNH

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN ZOURDOS AND | ) |
| HELEN ZOURDOS, | ) |
| Defendants. | ) |
| _____ | ) |

**RESPONSE OF JOHN AND HELEN ZOURDOS
IN OPPOSITION TO THE
GOVERNMENT'S SENTENCING MEMORANDUM**

Defendants, John and Helen Zourdos (Hereinafter "John" and "Helen"), hereby submit their response in opposition to the Government's sentencing memo. Sentencing is scheduled for July 13, 2022. John and Helen oppose the positions taken by the Government in its sentencing memorandum as extreme and unreasonable.

The Government proclaims that this case is one of "unmitigated greed and arrogance" an "egregious" "affront" to every honest, hard working taxpaying citizen. The Government demands, in a fashion reminiscent of an angry mob, that "both John and Helen should pay a heavy price for their crimes." [DOC #132 P.1] All fair minded people are thankful that this Honorable Court, not the Government, is entrusted with the task of determining John's and Helen's fate.

The instant case is a serious matter. However, it is an income tax case. This is not a crime of violence. This is not a Ponzi scheme were hundreds of individual victims have lost

their life's savings. In fact, there are literally hundreds of people that the IRS conducts civil tax audits on each year that are assessed tax deficiencies larger than the tax deficiency in this case. However, in those civil audits the taxpayers were never charged and were never brought to trial. The Government has lost its perspective in this case. Its sentencing memo reveals that it is only interested in extracting "a pound of flesh" from John and Helen. The Government is not interested in a sentence that is no harsher than necessary to: promote respect for the law; serve as a deterrent; protect the public from the defendant; reflect the serousness of the offense; and serve as just punishment.

The indisputable facts are that John and Helen all of their lives have been good hard working people. They have never had problems with the law. Through years of hard work, waking up each day at 4:00 am and working until 10:00 pm, they have operated three Dippin Donut stores that provide employment for approximately 20 individuals. John and Helen raised their children to be good citizens. In addition, Helen cares for her 93 year old mother who suffers from dementia. During the past 20 years, John and Helen have contributed to the community every time they have been asked. They are now ages 69 and 65 and have a amassed a lifetime of good deeds. Unfortunately, they are now convicted felons. Something that seemed unimaginable to both John and Helen before this case started. They have been humiliated in the community and have incurred great financial expense in the form of legal fees and costs associated with the trial. John and Helen will pay the taxes due. Every penny. The sum of $374,074 is presently held in escrow for that purpose. On top of all of that, their very liberty is now in issue.

The Government accuses John of lying on the stand when he stated that he made all of the records, that were needed to prepare accurate tax returns, available to Gilroy's bookkeeper, Heather O'Rouke when she visited the Dippin Donuts offices once a month. It must be remembered that counsel for the Government were not present and have no personal knowledge of what really occurred. Heather O'Rourke defiantly stated during cross examination that she never makes a mistake. However, O'Rourke's and Gilroy's claim that they did not have access to the sale journals/calendar notebooks is refuted by the very photographs the Government took of the Dippin Donut's office during the day the search warrant was executed (the books are shown on the desk O'Rourke used). O'Rourke's and Gilroy's testimony as to this issue is further contradicted by the undisputed fact that IRS Revenue Agent Susan Johnson obtained the 2014 and 2015 sales journals/calendar books from Gilroy and determined no change in the audit. Susan Johnson never met nor spoke with John and Helen. The books were retrieved by O'Rourke from the Dippin Donuts' office and given to Gilroy. Gilroy took them to Susan Johnson and explained them to her. The cash register receipts are also clearly shown in the photo of the Dippin Donuts' office. There are two large boxes at the desk. The cash register receipts were accumulated for years. (See Exhibit "A".) Nonetheless, Susan Johnson testified that Gilroy told her that the cash register tapes, that reflected all sales, were not available. Gilroy had not been to the offices of Dippin Donuts in years. He had assigned that task to O'Rourke. Government witnesses testified:

> Q And you also know that you told the grand jury when you were asked questions that you saw those notebooks laying opened on the desk; isn't that true?
> A Yes.    (Witness Shane McRae, Tr.T. Vol.3, P.377)

and further:

> Q And is it also true that that tape would literally have every transaction that went through that cash register during those days?
> A Yes.
> Q And isn't it also true that those tapes were kept in a box and just gathered there; isn't that correct?
> A Yes.
> Q And that the tapes seemingly lasted there for a long time; isn't that true?
> A Yes.     (Witness Catalina Lynness Tr.T. Vol.3, P.411-412)

The total adjusted sentencing guidelines level for both Helen and John should be 20. The base offense level should be 20 because the tax loss falls between $550,000 and $1.5 million. This covers the 6 years commencing 2012 through 2017. The government has intentionally labeled a substantial portion of the funds John took from Dippins Donuts as "constructive" dividends to enable it to tax John and Helen twice on the same money. The government did this despite the fact that no dividends were declared by Dippin Donuts during this period of time. There are no corporate minutes or board resolutions that authorize any dividends. Further, at trial, Gilroy admitted that he formed Dippin Donuts as a C Corporation in 2001 and that he told Helen and John early on to take bonuses to eliminate profits at the C Corporation level to avoid double taxation. CPA Gilroy testified that this was a common practice and he had explained this accounting procedure to them. (Tr.T.Vol.4,P.660-667)

The Government incorrectly claims that John should receive a 2 level enhancement for lying when he testified. Once again the Government lawyers have no personal knowledge of the facts. The truth is that John told the truth when he testified and he should not receive a 2 level enhancement simply because he exercised

his constitutional right to truthfully testify on his own behalf.

The Government argues that John and Helen avoided their own payroll taxes by taking cash wages. This argument ignores the fact that John and Helen followed Gilroy's tax advice and had O'Rourke used the sales journal/calendar books or cash register tapes properly, Gilroy would have included all of John's and Helen's taxable income on their annual tax return and the taxes would have been properly reported.

The Government argues for a 2 level upward adjustment for sentencing guidelines purposes because John and Helen allegedly encouraged others not to file accurate tax returns. There is absolutely no evidence that John or Helen ever encouraged any employee who received compensation for work over 40 hours not to report it on their tax return. The payments to the employees were legitimate business expenses. (See, CPA Gilroy at Tr.T.Vol.4, Page 660-661.) John testified that as a business policy Dippin Donuts did not pay time and a half for overtime. This decision did not have to do with the employer's approximately 6.7% payroll tax contribution on wages. That became the employee's obligation. Neither John nor Helen ever told any employee that they did not have to report the money they received as income on their individual tax returns. There should be no upward adjustment based upon the Government's claim that John and Helen encouraged others to violate the law. This is not a tax protestor case where the promoter convinces third parties that taxes are unconstitutional and they should not report their taxable income.

The Government objects to the presentence investigation report to the extent that it does not give John and Helen a 2 level enhancement for their roles in their

conspiracy with their son Dimitrios to evade taxes. However, John, Helen, and Dimitrios performed the same basic functions at the three Dippin Donuts locations. When one could not be at work, one of the others would fill in for that person. There was no conspiratorial hierarchy. They were family. A 2 level upward adjustment as to John and Helen is not appropriate.

The Government argues that because this case is a tax case John and Helen must be sentenced to a substantial period of incarceration. This is allegedly necessary to prevent the entire income tax system from collapsing. However, Court's in the Second Circuit on at least 104 occasions during 2021 held that a sentence of probation was the appropriate sentence in a criminal tax case and it would be appropriate here.

## Conclusion

John and Helen respectfully request that they be sentenced to 3 years of supervised release with a special condition that they serve 12 months through home confinement with a curfew, 500 hours of community service, and pay restitution of $951,665.

<table>
<tr><td>Dated July 5, 2022</td><td>Respectfully submitted,</td></tr>
<tr><td></td><td><u>/s/ David M. Garvin</u><br>David M. Garvin<br>DAVID M. GARVIN, P.A.<br>2333 Ponce de Leon Blvd.<br>Suite 314<br>Coral Gables, Florida<br>Tel: (305) 371-8101<br>Fax: (305) 371-8848<br>Email: dgarvin@garvin.law<br>Email: ontrial2@gmail.com</td></tr>
</table>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 5, 2022 I electronically filed the foregoing Sentencing Memorandum with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

                                                    */s/  David M. Garvin*  
                                                    David M. Garvin